City of Des Moines, Appellant, v. Ralph Bolton.

License and taxation of vehicles by cities. Code section 754 authorizing cities to regulate, license and tax vehicles kept for hire, is not limited to those let out or rented, but includes any conveyance used by the owner for conveying persons or property for hire.

Taxation of vehicles: ORDINANCE: UNIFORMITY. A city ordinance requiring the owner of an express wagon or other conveyance used for conveying persons or property for hire, to pay a license fee or tax, is not unconstitutional for want of uniformity, because exempting from the tax carriages and vehicles used in ordinary livery business.

*Appeal from Polk District Court.*— Hon. W. H. Mc-Henry, Judge.

Tuesday, April 4, 1905.

Prosecution for the violation of an ordinance. The trial court held the ordinance unconstitutional, and discharged the defendant. The city appeals.— *Reversed.*

*W. H. Bremner, W. H. Cohen,* and *R. B. Alberson,* for appellant.

*Crockett, Gillispie & Bannister,* for appellee.

Sherwin, C. J.— This case was submitted to the court on an agreed statement of facts, showing that the defendant was engaged in the transportation of property for hire without having obtained a license therefor, under the following conditions:

1. License and Taxation of Vehicles by Cities.

The defendant owns and maintains a barn, which is his own property, used exclusively by defendant for the care, feeding, and stabling of his horses, storing feed therefor, and the housing of wagons. That defendant also owns and maintains an office, where he receives orders for the employment of his wagons. That said wagon No. 11, when not engaged in loading, hauling, or unloading freight or goods to or from a job of work, does not stand or remain upon the streets or public places of the city of Des Moines, but uses the same wholly and exclusively as a highway in passing from place to place in said city, and loading and unloading goods, and in no other manner. That said wagon No. 11 does not solicit custom upon the streets or public places of said city, and custom is not solicited therefor upon the streets, or in or about hotels, theaters, depots, trains, or other public places of said city. That defendant sends said wagon No. 11 from his said barn to answer and fill calls and orders therefor received at his said office, and not otherwise, and, when said wagon is not so engaged, it stands in the private barn of defendant. That said wagon is kept and used only as herein stated, and in no other manner whatever. That defendant owns and operates nine wagons in the same manner as wagon No. 11, including in said number the said wagon No. 11.

The ordinance on which the prosecution was based, and which was held void because not of uniform operation, is in the following language, so far as material:

Every person, firm or corporation keeping and using any cart, wagon, street sprinklers, dray, coach, hack, omnibus, hackney wagon, herdic, express wagon or other conveyance for carrying persons or property for hire, shall pay a license fee or tax and procure a license. as herein provided, and no person shall drive or use or cause to be driven, or used, any such conveyance or vehicle on the streets of the city of Des Moines, in carrying persons or property for hire, without paying such license fee or tax and procuring such license. . . . This ordinance shall not be construed as applying to carriages and other vehicles kept and used strictly and entirely in ordinary livery business, and which do not stand or remain upon the streets and public places for the purpose of soliciting custom, and for which custom is not solicited upon the streets or in or about hotels, theaters, depots, trains or other public places.

Section 754 of the Code gives cities the power to "regulate, license and tax all carts, wagons, street sprinklers, drays, coaches, hacks, omnibuses, and every description of conveyance kept for hire." The vehicles specifically designated as subject to a license and tax by the ordinance are practically the same as those designated by the statute, but it will be noticed that the ordinance does not follow the precise language of the statute in referring to other vehicles, for it provides that all other conveyances kept and used "for conveying persons or property for hire shall" pay the tax, while the general language of the statute is  that a license and tax may be imposed on "every description of conveyance kept for hire." The appellee contends that the statute provides only for a tax on vehicles which are let out or rented, and that the ordinance goes beyond the power thus granted, by requiring a tax on such as are used "for carrying persons or property" while the vehicle

so used is under the exclusive control of the owner, as it was in the instant case. There are two reasons why the appellee's contention cannot be sustained: The statute specifically authorizes cities· to license and tax drays, carts, hacks, coaches, etc., all of which are commonly understood to be vehicles which are ordinarily used for the transportation of persons and property for hire; and, to bring such vehicles within the scope of the statute, it is only necessary to show that they are so used in fact. The provision permitting the city to license and tax every description of conveyance kept for hire was intended to so enlarge the power of the city that it may impose such tax on all vehicles kept for hire; but, if this language be held to apply only to the vehicles named in the statute, it is apparent that the appellee's construction thereof is too narrow and limited. It is a matter of common knowledge, for instance, that drays, street sprinklers, and omnibuses are not usually rented or let to be used and controlled by others; and the further provision of the same section makes it clear that the construction contended for was not contemplated by the Legislature, for it is provided that the city may fix " the rate and prices for the transportation of persons and property from one part of the city to another in the vehicles above named, and to require such persons to keep exposed to view, in or upon such vehicle, a printed table of the rates and prices so fixed." Construing the statute as a whole, the meaning of the words " kept for hire " is not doubtful, and the ordinance does not exceed the power therein given.

The trial court held that the provision of the ordinance excepting from its operation vehicles kept and used strictly in ordinary livery business was an unjust discrimination, and rendered the ordinance obnoxious to section 6, article 1, of the Constitution of the state, which· provides that " all laws of a general nature shall have a uniform operation," and in contravention of section 30, article 3, of the Constitution,

2. Taxation of vehicles: ordinance; uniformity.

relating to the assessment and collection of taxes. The constitutional requirement that all laws of a general nature shall have a uniform operation means that every law shall have a uniform operation upon all citizens, persons, or things of any class upon which it purports to act, and that there shall not be granted to any person or class of persons privileges which upon the same terms may not be enjoyed by all. So an act that applies to and embraces all of a class of persons who stand in the same condition or relation is a general, and not a special, law, within the meaning of the Constitution, as uniformity is attained by its operation on all persons in like condition. *Iowa R. R. Land Co. v. Soper,* 39 Iowa, 112; *McAunich v. Mississippi, etc., R. Co.,* 20 Iowa, 338; *Morris v. Stout,* 110 Iowa, 659. This general rule is subject only to the exception that the classification shall not be purely arbitrary or unreasonable. Cooley's Constitutional Limitations, 481 *et seq.; State of Iowa v. Garbroski,* 111 Iowa, 496.

If all who are under the same conditions are brought within the classification, there can be no just complaint; hence the precise question for determination is whether carriages and other vehicles used strictly and entirely in the ordinary livery business are under the same conditions as drays and other vehicles used for the transportation of persons and property for hire. A livery stable is ordinarily a place where horses and carriages are kept to be let for hire, and, in the ordinary conduct of the business, the horse or vehicle so let is in charge and under the control of the hirer or his representatives. *State of Minnesota v. Robinson,* 42 Minn. 107 (43 N. W. Rep. 833, 6 L. R. A. 339.) In *City of Burlington v. Unterkircher,* 99 Iowa, 401, in discussing an ordinance of the city providing for the licensing of vehicles used in carrying passengers, we said:

A passenger is not one who drives about a city for mere pastime only, in a vehicle of which he has absolute control. . . . The section quoted provides charges for

every vehicle or conveyance which is run for hire or profit. We are of the opinion that it does not apply to any conveyance which is not in charge and under the control of the owner, his driver, or other employé, and therefore that it does not apply to any conveyance which is let without a driver, and is in charge and under the personal control of the hirer or his representatives.

The statute gives municipalities the power to license and tax vehicles using its streets. When the fee required is only such as will cover the expense of enforcing the regulation as to a particular calling, it is under the police power of the state; but, when the-fee is larger than is necessary for such purpose, and is exacted for the purpose of revenue, the license is issued under the taxing power of the state, and is generally held valid. Elliott on Roads & Streets, section 454, and cases cited; *City of Terre Haute v. Kersey,* 159 Ind. 300 (64 N. E. Rep. 469, 95 Am. St. Rep. 298). Under the· statute, cities are required to keep their streets in repair, and it cannot be doubted that the Legislature, in the exercise of its discretion, has the power to authorize them to exact from those who use the streets with vehicles some compensation therefor (Elliott, *supra,* and section 71); and, if this be true, it is but reasonable and just that such use be classified, and that those who habitually use the streets for the transportation of heavy loads shall pay a reasonable license, or tax for such use; and, if the municipality may graduate the scale of fees charged, it may reasonably exempt therefrom all vehicles, the ordinary use of which will not materially wear its streets or obstruct the free use thereof. *City of Burlington v. Unterkircher, supra; Brooklyn v. Breslin,* 57 N. Y. 591; *Gartside v. East St. Louis,* 43 Ill. 47; *St. Louis v. Green,* 70 Mo. 562; *Nagle v. Augusta,* 5 Ga. 546; *State of Minnesota v. Robinson, supra; State v. Justus,* 91 Minn. 447 (98 N. W. Rep. 325, 64 L. R. A. 510); *City of Terre Haute v. Kersey, supra.*

Furthermore, the habitual use of the streets for the transportation of persons and property may, and ordinarily does, require more police supervision than their use for the ordinary purposes of travel.' In large cities it is often the case that the vehicle travel on the streets is confined entirely to the different public conveyances used thereon, and that the very nature of the service demands constant attention from the officers of the municipality. We find nothing unreasonable or arbitrary in the classification in question, and reach the conclusion that the judgment should be reversed, — *Reversed.*