CASE 37.—ACTION BY SAGALOWSKI & SON AGAINST THE
CITY OF LOUISVILLE.—January 20, 1910.

## City of Louisville v. Sagalowski & Son

Appeal from Jefferson Circuit Court (Chancery
Branch, Second Division).

SAMUEL B. KIRBY, Judge.

Judgment for plaintiffs, defendant appeals.—Reversed.

1. Licenses—Constitutionality of Ordinance—Uniformity of Taxation.—Const. Sec. 171, provides that all taxes shall be uniform upon all property subject to taxation. Section 181 provides that the General Assembly may delegate the power to cities to impose license fees on occupations. Ky. St. Sec. 2980, being part of a charter of cities of the first class, provides that each city may impose license fees on occupations. A city of the first class by ordinance provided that every person or corporation who intends to commence the business of selling any goods, etc., except by sample, shall first obtain a license. Held, that the ordinance is not in violation of Const. Sec. 171, as, under that section and section 181, it is competent for cities to select the occupations on which to lay a license tax, and it is not essential that all callings be taxed under the license system, and the city may classify those of the same occupations imposing a different license tax upon each class if the classification is a reasonable one, and the tax imposed is the same on all the class; neither is it essential that the license tax shall be uniform with the property tax, the license tax being in addition to the property tax, and it is lawful to impose a license tax on merchandising as an occupation.

2. Licenses—Municipal Ordinances—Validity—Amount.—Whether a license tax is so high as to be prohibitive is tested by considering whether the tax bears so heavily on the class taxed as to prohibit the occupation, and an ordinance imposing a license tax on merchandising which fixes the amount

to be paid for one year at $250 if the year begins on the first of September, and the sum of $100 for the time between the 1st of January and the 1st day of the following September, and the sum of $50 for the time beginning at any time be-tween the 30th day of April and the 1st day of August and ending on September 1st, held not so high as to be prohibi-tive.

CLAYTON B. BLAKEY and ELMER C. UNDERWOOD for ap-pellant.

.EUGENE R. ATTKISSON and ALEX G. BARRET for ap-pellees.

OPINION OF THE COURT BY JUDGE O'REAR—Revers-ing.

This appeal involves the validity of an ordinance of the city of Louisville, which reads as follows: "Every individual, firm or corporation who intends to commence after the first day of September of any year, the business of selling any goods, wares or mer-chandise, except by sample, shall first obtain a license therefor and pay in advance for the same as fol-lows, viz: If said business is commenced after the first day of September, and before the second of Jan-uary, said license fee shall be two hundred and fifty dollars. If said business is commenced at any time after the first day of January and before the first day of May, the license fee shall be one hundred dollars. If said business is commenced at any time between the 30th day of April and the first day of August, said license fee shall be fifty dollars. Each license is-sued under this section shall entitle the licensee to conduct or carry on said business until the first day of the next succeeding September. Each agent or em-ploye who conducts or manages said business, or as-sists in the conducting or managing said business before a license has been obtained therefor, shall be

guilty of a violation of this ordinance, and shall be liable to the penalty hereinafter provided.'' While this ordinance was before the court for construction in Louisville v. Roberts & Kreiger, 105 S. W., 431, 32 Ky. Law Rep. 182, its constitutionality on the ground now presented seems not to have been raised or considered.

It will be observed that the effect as well as evident purpose of the ordinance was to impose a tax on those itinerant merchants who come in after September 1st—the time of assessing such property for state, county and city taxes, and who would likely leave before the next assessing period came around. The suit was brought by appellees who were merchants opening up after January 1st and before August 1st and who were compelled to pay the license tax imposed by the ordinance or suffer prosecution and fine in the police court, seeking to recover the license taxes paid. A general demurrer to the petition filed by the city was overruled.

The circuit court held the ordinance to be violative of the Constitution in two respects: One, that it was not uniform taxation; and the other that the tax was so exhorbitant as to amount to confiscation.

Resident merchants have to pay a city as well as a county and state tax upon their stocks of merchandise valued as of the 1st day of September of each year. The city rate alone was $1.80 on the $100 of assessed value. The whole tax would be something like $2.50 on $100. The city's contention is that a great many people would open up a business as merchants after September 1st and quit it just before September 1st of the next year so as to escape this tax of $1.80 or $2.50, or whatever it might be. The resident merchants were not only put to a serious dis-

advantage in the competition which their more favor-
ed competitors were thus enabled to give, but the
city was defeated in the collection of considerable
revenue from a class of merchants who played at
hide-and-seek with the tax assessors, with all the ad-
vantages on the side of the dodgers.

Appellees assail the ordinance upon the ground
that it violates the uniformity clause of the Con-
stitution (section 171, Const.), in that (1) all mer-
chants in the city of Louisville are not required to
pay a license tax; (2) even under the ordinance those
who are required to pay a license tax are not assess-
ed upon a uniform scale—e. g., $250 a year for those
who enter after September 1st and before January
2d, those between January 1st and May 1st $100, and
those between April 30th and August 1st $50 is not
proportioned as to time, volume of business, or any
other reasonable basis.  By virtue of section 181, of
the Constitution "* * * the General Assembly may
by general laws * * * delegate the power to counties,
towns and cities, and other municipal corporations, to
impose and collect license fees on stock used for
breeding purposes, on franchises, trades, occupations
and professions."  The sources of revenue of cities
of the first class are defined by section 2980 of the
Kentucky Statutes, being part of the charter of cities
of the first class, which reads as follows: "Each city
shall raise a revenue from ad valorem taxes and from
a tax based on income licenses, and franchises, * * *
and may impose license fees on stock used for breed-
ing purposes and on franchises, trades, occupations,
and professions."  It has been held, construing sec-
tions 181 and 171 of the Constitution, that it is com-
petent for the municipalities to select the trades, call-
ings or occupations which they deem proper to lay a

license tax upon, and that it is not repugnant to the uniformity clause of section 171 either that all callings are not taxed under the license system, or that all occupations that are required to pay a license are not made to pay the same. Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A. (N. S.) 195; Brown-Foreman Co. v. Commonwealth, 125 Ky. 402, 101 S. W. 321, 30 Ky. Law Rep. 793; Louisville v. Schnell, 114 S. W. 742; Carlisle v. Hechinger, 103 Ky. 381, 45 S. W. 358, 20 Ky. Law Rep. 74.

It is allowed that the state or the municipality may classify even those of the same occupations, and impose a different license tax upon each class. All that is required is that the classification shall be a natural and reasonable one, and that the tax imposed shall be the same upon all of the class. Strater Bros. v. Commonwealth, 117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717. It is not necessary that a license or occupation tax shall bear the relationship of uniformity to property tax paid upon property. The Constitution does not contemplate that kind of uniformity. The two phases of taxation are wholly different. The ad valorem system is the principal plan of taxation in this state. The license system is cumulative, and in addition to the property tax. They are not related systems and were not intended to be measured one with the other. In the classification of callings selected as the subject of license tax, the only limitations in the Constitution are that there shall be an equality of the burden imposed on all who naturally or reasonably belong to the class that the tax shall not be confiscatory, and shall be imposed by general law for public purposes. Merchandising as an occupation may be taxed upon the license system. But it does not follow that all merchants must pay the same

license fee, or that all merchants must be included. They may be separated into grades or classes, regulated by any reasonable and just consideration which really makes of them separate classes. Drygoods merchants might be formed into one class, grocery merchants into another, druggists into another. But such is not this classification. The policy was primarily to raise revenue. It was secondarily to raise it from a class of property holders not otherwise reached by the taxing process. Those who do and those who do not may well be regarded as separate classes. Those who pay taxes upon regular assessments are a naturally distinct class of citizens from those who, though in the same business, so manage as to beginning and continuing it as to be out of business on the same day as of which the assessments are made. It was competent for the city council to have treated them as two distinct classes, though engaged in similar occupations. It was also competent to further divide the class to be subjected to the license tax into classes as was done. Those who begin their business after the assessing period but in time to get the benefit of the profitable holiday trade naturally enjoy a privilege more lucrative than do those who come in later; and those who get the benefit of plying their trades during the midwinter and early spring seasons have an easily perceived advantage over those who come in at the end of the spring, while those who begin in August find the dull summer season, just before autumn, and would probably be on hand for assessment the 1st of September. The divisions of the classes seem logically arranged, and the proportioning of the tax just. The argument advanced by appellee that these itinerent merchants are

thus doubly. taxed, because in addition to the license tax imposed on them they pay, or must be presumed to have paid, on their property—that is the money that was invested in the merchandise, and which was on hand in some form on September 1st—rests on a purely .ideal basis of fact. It is well known that but a small per cent., probably not over 1 per cent. of money is listed for taxation, and stocks, bonds, notes, and similar securities but little more. The fact is notorious, and was probably in the mind of the council when formulating the ordinance under consideration. Visible property pays more taxes because it cannot be .hid. Dodging in and out between assessing dates seems one of the ways of escaping taxation. It was to catch that class that the ordinance was drawn. If perchance some unoffending merchant falls within the class temporarily, his hardship will not avail the horde of old offenders who would continue to enjoy without cost what others provide. Similar statutes or ordinances have been upheld in states having similar provisions in their Constitutions to ours. State of Wyoming v. Willingham, 9 Wyo. 290, 62 Pac. 797, 52 L. R. A. 198, 87 Am. St. Rep. 948; Des Moines v. Bolton, 128 Iowa, 108, .102 N. W. 1045.

In this state we have long had a statute imposing a license tax on peddlers—who are. in a sense itinerant merchants. They are of the class who are ''here to-day and gone to-morrow.'' If not made to pay a license tax they would ply their trades in competition with taxpaying merchants,. reaping where they had not sown. The constitutionality of the statutes taxing them under the license system is no. longer questioned. Doubtless the tax so imposed is quite

disproportionate to the ad valorem tax laid on resident dealers in the same commodities.

Finally it is urged, and was so held by the chancellor below, that the tax in this ordinance is so high as to be prohibitive. Instances might be cited, could easily be imagined, where any license tax of enough moment to meet the requirements of its enactment bore so heavily on certain individuals as to be severely onerous, perhaps oppressive. Yet no tax nor other rule is to be tested by its exceptions alone. The test is whether the tax bears so heavily on the class, not isolated and exceptional individuals, as to prohibit the occupation—as to be confiscatory. There is nothing appearing in this record that such is the actual effect of this tax, nor does it appear to us as being so.

Judgment reversed and remanded, with directions to sustain the demurrer to the petition.