## King v. Commonwealth, on Relation, etc.

(Decided March 7, 1922.)

Appeal from Daviess Circuit Court.

1. Statutes—Abatement of Houses of Prostitution.—Chapter 61, Acts 1918, now section 3941m, Carroll's Kentucky Statutes, 1922, providing for the abatement of houses of lewdness, assignation and prostitution, by injunction, is constitutional and valid.

2. Nuisance—Abatement—Disorderly House.—The fact that the defendant is indicted in the criminal courts for maintaining a bawdy house and is fined, does not prevent the attorney for the Commonwealth from proceeding by equitable action to abate the nuisance.

3. Nuisance—Abatement.—The abatement of a bawdy house nuisance after the institution of an equitable action for that pur-

pose does not take from the court jurisdiction to grant the relief sought or relieve the defendant from the payment of costs, nor prevent the Commonwealth from enforcing its lien upon the property of the defendant used in the conduct of the nuisance.

4.   Nuisance—Abatement—Injunctive Relief.—Ordinarily the extraordinary remedy of injunction will not be granted where there is an adequate remedy at law, but in cases of public nuisance by the maintenance of a bawdy house, courts of equity, by special statute, are authorized to grant injunctive relief in abatement of the nuisance, but this does not preclude the criminal courts from indicting, trying and convicting the defendant for the criminal offense, the equitable relief being ancillary to the criminal prosecution.

FLOYD J. CASWELL for appellant.

H. A. BIRKHEAD, CHAS. I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

· OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This is an equitable proceeding instituted in the Daviess circuit court by the Commonwealth on relation of C. E. Smith, Commonwealth's attorney for the sixth judicial district, under chapter 61, Acts 1918, now section 3941m, Carroll's Kentucky Statutes, 1922 edition, to enjoin and abate a house of lewdness, assignation and prostitution, and to enjoin and restrain appellant King and Jessie Westerfield from maintaining and operating said house. The action was instituted on February 1, 1919, which was Saturday, but the process was not executed on that day, and the defendants, King and Westerfield, learning of the proceeding, hastily moved all the furniture and fixtures from the house which is designated as 120 Mulberry street, Owensboro, and she fled the country. At the previous September term of the Daviess circuit court, the defendant, Jessie Westerfield, was indicted for setting up, maintaining and conducting a common nuisance by having and keeping a bawdy house. On January 7, 1919, the case came on for trial, and defendant, Jessie Westerfield, pleaded guilty to the charge in the indictment and was fined the sum of $50.00 and costs. Immediately following this conviction she returned to her place of business and continued to conduct the nuisance. The property belonged to the defendant, J. D. King. It is charged in the petition that he rented it to her about ten months previous to the bringing of this action for the purpose of carrying on a bawdy house, and that she placed in the house musical instruments and such fur-

niture and paraphernalia as is commonly employed in such business, and began to and thereafter maintained in the said house a nuisance by inviting and permitting lewd men and women to congregate in and at said place for immoral purposes, and that this was with the knowledge and consent of the defendant, King, who participated in some manner in the profits arising therefrom.

By this action the Commonwealth's attorney sought a temporary injunction to abate the nuisance, and gave notice in writing to the defendants that he would, on a certain day, apply for a permanent injunction perpetually enjoining and restraining the defendants and each of them from having, keeping, or maintaining the aforesaid nuisance. On proper showing the temporary injunction was granted. On the 21st day of February the defendant, J. D. King, filed his answer by which he controverted some of the averments of the petition, but admitted most of the material ones. Affirmatively he pleaded that immediately after the filing of this action he, in good faith, abated the nuisance by causing the occupants of the house to vacate and to remove all furniture from the house; that said house, at the time of the filing of the answer, was unoccupied and had not been occupied by any person since the first of February. In other words, he admitted that the nuisance, of which complaint was made, was conducted in the house, and in the way and manner charged in the petition, until after the filing of this suit and the making of the motion for injunction. However, he insists that as the nuisance was abated before judgment no order awarding a permanent injunction against appellant should have been entered. On final hearing, after due preparation of the case by both sides, the chancellor granted a perpetual injunction against both defendants, and as all the personal property had been removed from the house the court adjudged a lien on the real property described in the petition for the security and payment of an attorney fee of $200.00 adjudged to the attorney for the plaintiff and costs of the action, and from this latter order this appeal is prosecuted by King.

Appellant contends that the judgment should be reversed (1) because the act under which this proceeding was instituted and prosecuted was and is unconstitutional and void; (2) because the court erred in granting an injunction after the nuisance had been abated. The first and second sections of the act read:

"That whoever shall erect, establish, continue, maintain, use, own, occupy, lease or sublease any building, erection or place used for the purpose of lewdness, assignation, or prostitution in the Commonwealth of Kentucky shall be guilty of a nuisance, and the building, erection or place, and the ground itself in or upon which such lewdness, assignation, or prostitution is conducted, permitted, or carried on, continued, or exists, and the furniture, fixtures, and musical instruments therein, and all other contents thereof are declared a nuisance, and shall be enjoined and abated as hereinafter provided.

"2. That whenever a nuisance is kept, maintained, or exists as defined in this act the Commonwealth attorney or county attorney, or any citizen of the county wherein such nuisance exists, may maintain an action in equity in the name of the Commonwealth of Kentucky, upon the relation of such attorney or citizen, to perpetually enjoin said nuisance, the person or persons conducting or maintaining the same, and the owner or agent of the building or ground upon which the nuisance exists. In such action the court, or a judge in vacation, shall, upon the presentation of a petition therefor alleging that the nuisance complained of exists, grant a temporory injunction without bond, if the existence of such nuisance be made to appear to the satisfaction of the court or judge by evidence in the form of affidavits, depositions, oral testimony, or otherwise, as the complainant may elect. Three days' notice, in writing, shall be given the defendant of the hearing of the application. When an injunction has been granted it shall be binding on the defendant throughout the Commonwealth of Kentucky, and any violation of the provisions of injunction herein provided shall be a contempt as hereinafter provided."

The eleventh section of the act is as follows:

"If any person be convicted in any court of this state, of keeping or maintaining a bawdy or disorderly house or house of ill fame, or house of assignation, the county attorney or prosecuting attorney of such court, in which such conviction shall have occurred, shall, or any citizen of the state may, institute injunction proceedings against such person in a court of equity, as provided in this act, and the said judgment of conviction shall be warrant for the court of equity issuing an injunction as provided therein against said person and the property unlawfully used as provided herein."

King insists that the act contravenes the seventh section of the Constitution of Kentucky guaranteeing the defendant in criminal cases trial by jury, and also violates subsections 1, 4, 22 and 29 of section 59 of our fundamental law.

Our Constitution, section 7, says: "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution." Many other state constitutions contain like or similar provisions. In a purely equitable proceeding as is this the defendant is not now and never has been entitled to trial by jury, and the constitutional provision copied above was not intended to apply to actions cognizable only in equity. It only guaranteed to the defendant a jury trial in cases in which, anciently, he was so entitled. As the defendant was not anciently entitled to trial by jury in cases where the relief sought was purely equitable as in this case, the seventh constitutional provision relied upon has no application. It is argued, however, that this is not an equitable proceeding purely, but only so by legislative enactment; that it is in the nature of a criminal prosecution which is merely a legal proceeding or common law action. It will be observed that the act, under which this proceeding was instituted, does not provide penalties for the offense of carrying on or maintaining a nuisace. The act only provides for the abatement of an established nuisance such as the one carried on by appellant in Owensboro at the time of the commencement of this action. It was intended to cover cases where the facts are as they were in the instant case. The legal remedy ordinarily invoked in such cases—indictment of the maintainer of the nuisance —proved wholly inadequate. The defendant, Jessie Westerfield, was duly indicted for the offense. When the case was called for trial she appeared and pleaded guilty to the charge in the indictment, was fined, and while the record does not show it, no doubt she immediately paid or replevied the same, for she returned to her place of business and continued to conduct it to the annoyance and aggravation of the public in general living in that part of the city. It, therefore, plainly appears that the legal remedy invoked by the Commonwealth attorney in the name of the state was inadequate, and that the equitable arm of the court was necessary to the suppression and abatement of the nuisance. In some cases we have held that a nuisance would not be enjoined where there

was an adequate remedy at law, and these cases are invoked as authority by appellant in his assault upon the judgment in this case.

One of the leading texts upon the subject declares the general rule to be that in case of public nuisance, where the application is for an injunction only, no damages being demanded, the constitutional guaranties do not require trial by jury. (20 R. C. L., page 484.) The foregoing text is supported by the following Kentucky cases: Respass v. The Commonwealth, 131 Ky. 807, 21 L. R. A. (N. S.) 836; Mercer County v. Harrodsburg, 66 S. W. 10. The only relief sought in this proceeding by the Commonwealth was abatement of the nuisance. As an incident to such prosecution the defendant is made liable for the costs, and judgment may go against the property used in carrying on the nuisance, but no damages or other relief was sought. There is a clear distinction between a proceeding to abate a nuisance, which looks only to the property that, in the use made of it, constitutes a nuisance, and a proceeding to punish an offender for the crime of maintaining a nuisance. The two proceedings are entirely different, as are the results sought to be obtained. In upholding a similar statute, against which was invoked a constitutional provision in favor of trial by jury, the Supreme Court of Colorado said: ''Keeping a bawdy house is a statutory offense, and was a crime at common law. If it were a criminal action defendant would be entitled to trial by jury, but it is not a criminal action. It is a civil action in equity, by injunction to restrain defendant from permitting the keeping of such a house on his premises and to abate the nuisance. The equitable action is in aid of the criminal statute. Anyone subject to prosecution under the Criminal Code for keeping a bawdy nouse, and any one permitting it to exist on his premises, is subject to injunction under the civil action. Since the purpose of the statute is not the infliction of punishment against the offender, that being left to the criminal law, but the suppression of the unlawful keeping, the claim that keeping a bawdy house is a criminal offense under the statute makes no difference; therefore, there can be no successful assault upon the statute because it provides civil action to enjoin the violation of a criminal statute. The power of the legislature to thus extend the bounds of equity jurisdiction, as well as to prescribe the precedure, is well established.'' The following cases are to the same effect: Mughler v. Kansas, 123 U. S.

623; Fulton v. State, 171 Ala. 572; Littleton v. Fritz, 65 Iowa 488; State v. Jordan, 72 Iowa 377; Chase v. Revere House, 232 Mass. 88; Robertson v. Wheeler, 131 Minn. 308; State v. Marshall, 100 Miss. 626; English v. Fanning, 96 Neb. 123; State v. Murphy, 71 Vermont 127; Attorney General v. Stoughton Club, 163 Wis. 362, and Kregg v. People, 176 Pacific 483. The Iowa courts have gone further and held that a statute similar to the one under which this proceeding is being prosecuted is not violative of the constitutional provision that punishment shall not be inflicted without indictment by grand jury. (72 Iowa 377.) It is also held by the courts of Alabama, Minnesota, Nebraska, Iowa and Wisconsin that a statute similar to the one under consideration does not violate the due process of law guaranty of the Constitution.

In holding that a similar statute did not violate the guaranty of trial by jury, the Oklahoma Supreme Court assigned two reasons which have been concurred in by other courts: (1) that such statutes do not relate to criminal law; (2) that the guaranty of a trial by jury, which is interpreted to mean the jury trial as it existed at the common law, or at the time of the adoption of the Constitution, and which, as thus interpreted, excludes equitable actions, does not prevent injunctive relief. In support of the second reason it is said that it is a general theory that the right of trial by jury, guaranteed by the constitutions of the various jurisdictions, is the right as it existed at common law, or at the time of the adoption of the particular Constitution. There being no right of trial by jury in an equitable proceeding under the common law, there is no violation of the guaranty in not providing a jury trial in actions in equity under these statutes. We therefore conclude that the act under consideration is not repugnant to the seventh section of our state Constitution.

That part of section 59 of the Constitution which is urged by appellant as in conflict with the act under consideration, reads as follows:

'The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:

"1. *Jurisdiction—Practice of Courts—Officers' Fees.* —To regulate the jurisdiction, or the practice, or the circuits of the courts of justice, or the rights, powers, duties or compensation of the officers thereof.

"4. *Punishment for Crimes—Remission of Fines.*— To regulate the punishment of crimes and misdemeanors, or to remit fines, penalties or forfeitures.

"22.   *Liens.*—To authorize the creation, extension, enforcement, impairment or release of liens.

"29.   *Special Law Not to be Passed—When.*—In all other cases where a general law can be made applicable, no special law shall be enacted."

It is said that the statute in question is both special and local legislation and, therefore, unconstitutional. We do not think it is subject to such classification. Laws which apply to and operate uniformly upon all members of any class of persons, places or things, requiring legislation peculiar to themselves in the matters covered by the laws in question are general and not special. Laws which are framed in general terms and are not restricted in locality but operate equally upon all groups of objects, which having regard to the purpose of the legislation or distinguished by characteristics sufficiently marked and important to make them a class by themselves, are declared in Van Ripper v. Parsons, 40 N. J. L. 123, to be general. Special legislation is such as relates either to particular persons, places or things, or to persons, places or things, which though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied, while a local law is one whose operation is confined within territorial limits, other than those of the whole state or any properly constituted class or locality therein. (Bouvier's Law Dictionary.) Measured by these definitions the act under consideration is neither special nor local legislation. It applies to all persons maintaining and operating bawdy houses in this Commonwealth, wherever situated or of whatever nature or class. It is, therefore, a general law within the meaning of our Constitution. It is not local because it is not confined to any locality in the state; it is not special because it has a general application to all bawdy houses.

This act is merely in aid of common law. It is a cumulative remedy which the state or its citizens may invoke to end a public nuisance in the nature of a bawdy house. In the absence of constitutional limitation the legislature may pass any law or legislate upon any subject, and the mere fact that courts of equity in this jurisdiction have not been operating under a statute similar to the one in question is no argument that the law-making body of this

Commonwealth may not confer upon courts of equity additional power with respect to public nuisances.

Appellant insists that the court should not have granted a perpetual injunction against him after the discontinuance of the nuisance, to abate which the suit had been commenced. It is admited by appellant that carrying on a bawdy house is a public nuisance and a violation of the law. He does not assert any right to maintain such a place. The evidence clearly shows that he and his co-defendant were engaged in this nefarious and unholy avocation at the time of the bringing of this action, and that on the next day (Sunday) and before service of the process, he and others hastily moved the furniture out of the house and carried it away. The Commonwealth charges that the defendant King did this for the purpose of evading the payment of costs, which are incident to this kind of proceeding, the statute providing that the furniture in the house, as well as the real property, shall be subject to the costs. However this may be, the chancellor had a broad discretion to grant or withhold the injunctive remedy sought by the Commonwealth. Under the facts of this case we are satisfied that he wisely granted the permanent injunction although the nuisance had been abated, but after the action had been commenced, and after the common law remedy by indictment had failed to rid the community of this moral pestilence. In the case of Roberts, etc. v. City of Louisville, 92 Ky. 108, an injunction had been sought against the general council of the city of Louisville to prevent it passing a certain ordinance, and selling and disposing of certain wharf property and privileges in which the plaintiffs were interested. After the bringing of the action the proposed ordinance was withdrawn, and it was argued at the trial that as the ordinance was withdrawn the thing which provoked the litigation was at an end; that no permanent injunction should be granted, and in answer to this contention we said:

"It is stated, in the answer, that the ordinance was withdrawn after commencement of the action, and was not before the general council when the trial was had. But, as the plaintiffs had a cause of action, withdrawal of the ordinance did not have effect to defeat their right to the relief sought, especially as another ordinance of the same character may be hereafter introduced and passed unless the right to do so be perpetually enjoined. (14 R. C. L., page 308.)"

With much more reason could it be urged that the perpetual injunction was necessary in this case because of the nature of the business enjoined and the likelihood of it reviving under cover as soon as the stay of the court is withdrawn. The chancellor no doubt had in mind the fact that the common law judgment against the defendant, Jessie Westerfield, had been ineffectual to abate the nuisance; that in spite of the efforts of the grand jury and the prosecutor the business continued, and that it only disappeared when this suit was instituted and an injunction sought. No other remedy seemed adequate to the situation. Moreover, appellant King had no right to operate such a business. He claims none, and was not and cannot be injured by the granting of the perpetual injunction.

Finding no eror to the prejudice of appellant, the judgment is affirmed.