**GEORGE WIEDEMANN BREWING COM-PANY, a Kentucky Corporation, Newport, Kentucky, Appellant,**

v.

**CITY OF NEWPORT, Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 27, 1959.

Lewis Levy, Geoghegan, Levy & Daly, Cincinnati, Ohio, for appellant.

Morris Weintraub, Newport, for appellee.

CULLEN, Commissioner.

Under authority of KRS 243.070 (a part of the general alcoholic beverage control statutes) the City of Newport imposes an annual license fee of $500 on brewers. The George Wiedemann Brewing Co., which operates in Newport, pays this fee. In addition, the city has enacted a general occupational license tax ordinance, applicable to substantially all businesses, occupations and professions in the city, which as to "manufacturers" (defined to include brewers) imposes a tax equal to one-twentieth of one percent of gross receipts. Wiedemann has refused to pay the latter tax, maintaining that the city is precluded by the statutes from imposing any "license" fee or tax on brewers in excess of the $500 fee permitted by KRS 243.070. The city contends that the fee authorized (and limited) by KRS 243.070 is a *regulatory* fee, and that there is no restriction on the power of the city to impose license taxes for revenue purposes.

In a declaratory judgment action brought by Wiedemann against the city, judgment was entered holding Wiedemann liable for the occupational license tax. Wiedemann has appealed.

The primary question presented is one of statute interpretation. The main statute relied upon by Wiedemann is KRS 243.070, which reads:

"The city legislative body of any city in which traffic in alcoholic beverages is not prohibited under KRS Chapter 242 may impose license fees for the privilege of manufacturing and trafficking in alcoholic beverages. Only such licenses may be issued as correspond, in their provisions and the business authorized, to the licenses provided for in subsections (1), (2), (3), (5), (6), (7), (15) and (16) of KRS 243.030 and subsections (1), (2), (3) and (6) of KRS 243.040. The fees imposed shall not exceed twice the amount of the fees imposed in KRS 243.030 and 243.-040 for such licenses, except that the fee for a malt beverage retailer's license may be fixed at not exceeding two hundred dollars, the fee for a

brewer's license shall not exceed five hundred dollars, and the fee for a distiller's license shall not exceed five hundred dollars."

The question is whether this statute imposes a $500 limit on the city's total license taxing power as it relates to brewers, or merely restricts the amount of the *regulatory* fee the city may impose, leaving unrestricted the city's general power to impose license taxes for *revenue* purposes.

The power of cities to impose license taxes derives initially from Section 181 of the Kentucky Constitution, which provides that the General Assembly may by general laws delegate the power to cities to impose and collect "license fees" on "franchises, trades, occupations and professions." For a great many years this power has been delegated to cities by virtue of the provisions of KRS 91.200 and 92.280. In City of Louisville v. Sebree, 308. Ky. 420, 214 S.W.2d 248, the Louisville occupational license tax ordinance was upheld as a valid exercise of the power delegated to cities, under authority of Section 181 of the Constitution, to impose "license fees" on "franchises, trades, occupations and professions."

In 1948 a general statute, KRS 92.281, was enacted, authorizing cities of all classes to levy and collect "any and all taxes provided for in Section 181 of the Constitution," subject to several restrictions or qualifications, one of which, as set forth in subsection (2) of KRS 92.281, is "Nothing in this section shall be construed to repeal, amend or affect in any way the provisions of KRS 243.070." In the briefs in the case before us, considerable attention is devoted to this statute, but it seems to us to have little significance as concerns the question in issue, because the Newport occupational license tax ordinance finds its authority in that part of Section 181 of the Constitution that permits cities to be given the power to impose "license fees," which power was granted by KRS 92.280 long before the enactment of KRS 92.281. In

Paducah Automotive Trades Ass'n v. City of Paducah, 307 Ky. 524, 211 S.W.2d 660, decided before the enactment of KRS 92.-281, it was·held that cities of the second class (as is Newport) could levy an occupational license tax on the basis of gross receipts, under authority of KRS 92.280.

The situation that confronts us is this: KRS 243.070 provides that city "license fees" imposed upon a brewer shall not exceed $500 per annum; and the Newport occupational license tax must be considered as imposing "license fees" because the only authority for the city to impose such a tax is the authority conferred under Section 181 of the Constitution to impose "license fees." In order to uphold the occupational tax against Wiedemann, we would have to conclude that KRS 243.070 is intended to put a limit only on such license fees as are imposed for the purpose of *regulation,* and not on such as are imposed for the purpose of raising *revenue.*

█ It is true that in the absence of some special restriction, a city may impose both a license tax for regulatory purposes and a license tax for revenue purposes. Hertz Drivurself Stations v. City of Louisville, 294 Ky. 568, 172 S.W.2d 207, 147 A.L.R. 306. However, we have here, in KRS 243.070, a form of special restriction.

There appear to be several reasons why KRS 243.070 cannot be construed as placing a limit only on *regulatory* license fees. First, the language itself does not purport to recognize any classification of "license fees" according to purpose. Second, the nature and amount of the fees permitted by the statute do not clearly categorize these fees as being regulatory only. It appears that the amount of the brewer's license fee has been fixed on a purely arbitrary basis, without any attempt to cor-. relate it with the reasonable expense of regulation. Third, in view of the fact that there is a *constitutional* limit on regulatory license fees, in that they must bear a reasonable relation to the cost of regulation,·

see Kroger Grocery & Baking Co. v. City of Lancaster, 276 Ky. 585, 124 S.W.2d 745, there is little reason to believe that the legislature intended the *statutory* limit to apply only to regulatory license fees.

 It is argued that KRS 243.070 merely limits license fees imposed "for the privilege of manufacturing * * * alcoholic beverages," and that the occupational license tax is not on the *privilege* of doing business but rather on the doing of business in fact. This is indeed a nebulous distinction, and to invoke it here would require us to resolve every doubt in favor of taxability. This we should not do, because the established policy in the interpretation of taxing statutes is to resolve doubts in favor of the taxpayer. Frank Fehr Brewing Co. v. Commonwealth, 296 Ky. 667, 178 S.W.2d 197.

 We cannot escape the conclusion that KRS 243.070, in placing a limit on city "license fees," means *all* license fees, regardless of whether imposed for the purpose of regulation or for the purpose of raising revenue. Accordingly, we hold that the occupational license tax, which must be considered a license fee because the city's power to impose it comes only from the delegation of authority under Section 181 of the Constitution to impose "license fees," cannot be collected from brewers. If cities had power to levy income taxes or excise taxes, it would not be difficult to uphold an occupational tax under that power, but the plain fact is, that except for ad valorem taxes and taxes "on personal property, tangible and intangible, based on income, license or franchises, in lieu of an ad valorem tax thereon" (Const. § 181), cities are confined to "license fees" as a source of revenue.

 The city argues that if KRS 243.070 does in fact place a $500 limit upon all kinds of city license taxes against brewers, it is unconstitutional in that it deprives the cities of a power conferred by Section 181 of the Constitution; it constitutes spe-cial legislation in violation of Section 59 of the Constitution; and it is discriminatory.

 To the extent that this argument is addressed to Section 181 of the Constitution, we think the answer is that this section does not of itself grant any taxing power to cities, but only authorizes the General Assembly to delegate taxing power "by general laws." It is well settled that a law making reasonable classifications is a "general law." King v. Commonwealth, 194 Ky. 143, 238 S.W. 373, 22 A.L.R. 535; Shaw v. Fox, 246 Ky. 342, 55 S.W.2d 11; Wilson v. Bates, 313 Ky. 333, 231 S.W.2d 39; Commonwealth v. Moyers, Ky., 272 S.W.2d 670. By the same authority, a law making reasonable classifications does not violate Section 59 of the Constitution.

As concerns the matter of discrimination, it is questionable whether there is any constitutional prohibition against discrimination in the field of license taxes, except within classifications. In City of Louisville v. Sagalowski & Son, 136 Ky. 324, 124 S.W. 339, 340, it is said:

"* * * It has been held, construing sections 181 and 171 of the Constitution, that it is competent for the municipalities to select the trades, callings, or occupations which they deem proper to lay a license tax upon, and that it is not repugnant to the uniformity clause of section 171 either that all callings are not taxed under the license system or that all occupations that are required to pay a license are not made to pay the same. * * *"

Also, in Gordon v. City of Louisville, 138 Ky. 442, 128 S.W. 327, this statement is made:

"There is a class of persons engaged in the business known as 'merchandise brokers,' and this business is as distinct from other classes of business as is the hardware merchant from the dry goods merchant, or the dealer in grain from

the dealer in boots and shoes. Therefore, the merchandise broker, being engaged in a business easily distinguishable from any other business, it was competent for the city council to select as special objects of taxation persons engaged in this particular business. We have frequently upheld the validity of ordinances selecting classes of persons for taxation distinct from other classes; and, when the business is so easily identified that a classification may be made that will separate it from other classes, there is no reason why municipal authorities should be denied the right to make the selection. * * *"

However, even if it be assumed that distinctions between classes, in the imposition of license taxes, may not be made upon a purely arbitrary basis, it is sufficient that there be a reasonable basis for the distinction. In Williams v. City of Bowling Green, 254 Ky. 11, 70 S.W.2d 967, 968, it is said:

"* * * A classification adopted by a Legislature in imposing occupation taxes will be held constitutional if there are substantial differences between the occupations separately classified, and such differences need not be great. * * *"

To the same effect are the holdings in Reynolds Metal Company v. Martin, 269 Ky. 378, 107 S.W.2d 251, and Hartman v. City of Louisville, 282 Ky. 487, 138 S.W.2d 948.

In Beavers v. City of Williamsburg, 306 Ky. 201, 206 S.W.2d 938, a city license ordinance making a substantial difference in the amount of fees payable by operators of trucks and operators of taxicabs was held valid. And in City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248, it was held that the exemption of domestic servants from an occupational license tax imposed upon all other classes of persons engaged in gainful employment was proper.

 Clearly, the alcoholic beverage business is of such a special character that its treatment as a separate classification for purposes of regulation and license taxation is not subject to question. It has long been recognized as a business that can be singled out for specialized treatment. See Ziffrin, Inc., v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128; Reeves v. Simons, 289 Ky. 793, 160 S.W.2d 149. So we can find no basis for the argument that the statutory limit upon license fees for brewers makes an unconstitutional discrimination.

The judgment is reversed, with directions to enter judgment in conformity with this opinion.