## Commonwealth, ex rel. Attorney General, v. Brown.

(Decided May 22, 1931.)

198

J. W. CAMMACK, Attorey General, and ED BLOOMFIELD for appellants.

N. R. PATTERSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

Prior to 1924, Dr. J. I. Patterson owned and operated a drug store in Pineville, Ky., and in that year he sold it to the appellee and defendant below in this case, C. M. Brown, who had been in the employ of Patterson for some time prior to that purchase. While defendant was so employed as clerk for Patterson he held no certificate authorizing him to compound medicines, or fill prescriptions, as is required by article 2, chapter 85, of the 1930 Edition of Carroll's Kentucky Statutes, and being its sections 2619-2635a, both inclusive; nor has he obtained any such certificate from the Kentucky board of pharmacy, as is therein required, since he purchased the drug store from Patterson, either by original examination, or by the reciprocity plan therein provided.

On May 18, 1929, the commonwealth, on relation of its Attorney General and the Kentucky board of pharmacy, as joint plaintiffs, filed in the Bell circuit court their petition in equity against defendant, alleging therein the fact that he was violating the statute, supra, in that he was filling prescriptions, compounding medicines, and engaging in other conduct forbidden by the statute, without possessing such certificate and without having an employed registered pharmacist in his drug store, and, therefore, that the prescriptions compounded by defendant were not under the supervision of any such person, nor, of course, by any such employe, because, as alleged, there was none employed in the drug store. It was then alleged that the statute was not only being violated by defendant, but that such violations were hazardous to the lives and health of the patronizing community, and because of which it was further alleged, that defendant's conduct in so violating the statute (which was enacted under the police power of the commonwealth

with the view to protect those who were unfortunate enough to need and require the compounding of prescriptions) was in effect a public nuisance which could be abated by injunctive process, notwithstanding the penalty prescribed in the statute for its violations.

The sole prayer of the petition was:

"Wherefore, the plaintiffs pray judgment against the defendant, C. M. Brown, for an injunction enjoining and restraining the defendant, C. M. Brown, from forever hereafter, or until he is duly and legally licensed and registered so to do by the Kentucky Board of Pharmacy, or until he employs a pharmacist registered under the laws of the State of Kentucky, from practicing pharmacy or conducting or operating a drug store, or compounding or dispensing prescriptions or vending at retail drugs, poisons, medicines, or pharmaceutical preparations, in this county or in the state of Kentucky."

Defendant did not demur to the petition, but in his answer he denied its material allegations, i. e., the one charging that he was not a registered pharmacist, or that he was operating a drug store without an assistant registered pharmacist. He then admitted in another paragraph that he himself held no certificate as required by our statute, supra, but averred that he was a duly licensed pharmacist in the states of Georgia and Tennessee and was, therefore, qualified to act as a prescriptionist in this commonwealth; that he had applied to the Kentucky board of pharmacy for a reciprocal certificate and it had refused him; that there were occasions during the time he owned the drug store, and prior to the filing of the action, when he was without a clerk or assistant possessing a Kentucky certificate for the compounding of medicines, but he attempted to excuse them on the ground that they were inevitable and which he could not prevent, but which he remedied as soon as he reasonably could by procuring an assistant or clerk possessing such qualifications. He nowhere alleged that during such occasions he ceased to fill prescriptions, compound medicines, or to do any of the things that the statute forbids to be done by one not so qualified. Following pleadings and motions made the issues, and the court to whom the cause was submitted after proof taken by depositions dismissed the petition, to reverse which plaintiffs prosecute this appeal.

It was insisted in the pleadings of defendant that plaintiffs could not maintain the action, upon the ground that injunction was not an appropriate remedy to prevent the commission of crime, and that, since the involved statutes prescribe a penalty for the complained of conduct of defendant, done and committed by him without possessing the required certificate, a prosecution, as provided for in the statute, was the only remedy. Counsel for plaintiffs met that contention with our opinions in the cases of Commonwealth v. McGovern, 116 Ky. 231, 75 S. W. 261, 25 Ky. Law Rep. 411, 66 L. R. A. 280; Respass v. Commonwealth, 131 Ky. 815, 115 S. W. 1131, 21 L. R. A. (N. S.) 836; Kentucky State Board of Dental Examiners v. Payne, 213 Ky. 382, 281 S. W. 188, 190; Erlanger Kennel Club v. Daugherty, 213 Ky. 648, 281 S. W. 826; Jones v. Commonwealth, 222 Ky. 173, 300 S. W. 346, and others referred to therein. When so confronted, counsel for defendant abandoned that argument made at the trial court and which he has also done in this one by saying in his brief:

"Let the appellee further concede that, although the statutes denounce the practicing of pharmacy without a licensed pharmacist and prescribes a penalty, yet in this character of case an injunction will lie to prevent the committing of the things without a license, although the general rule is that injunction will not lie to suppress the commission of a crime. Therefore, to clear away the brush, as it were, the appellee is here conceding that he has no right to compound prescriptions without a license, and that if he does do so that an injunction will lie to prevent him, and if he were doing so at the time of the filing of a suit praying an injunction, and later desisted, the suit would still progress as if he were doing the things sought to be enjoined. There could be no more sweeping concession than that, and it is conceded because the authorities cited by the appellant and those not cited, support the contention as claimed by the appellant and it is the law as here conceded."

In those cases it was clearly recognized by this court that ordinarily an injunction is not an appropriate remedy to prevent the commission of crime, and it was further said therein, under a well-recognized exception to that general rule, in substance, that in cases of

this kind, wherein statutes were enacted under the police power in furtherance of the public welfare, something more than the creation of a crime was involved in the enactment, and that the primary purpose and object of such a statute was to protect members of society against dangers which the statute attempted to eliminate, and also against possibilities to which the penalized conduct inevitably led, and in the Payne case on that subject we said:

"The statute involved here is not purely a criminal one. It was enacted, as we have seen, under the police power of the state and in furtherance of a wholesome public policy. The purpose was not to create a crime, but to provide for the public welfare. The criminal feature was only intended as a deterrent and a partial restraint, and was inserted for the purpose of admonishing the practitioner that he must comply with the salutory terms of the statute, and which compliance was the chief purpose in enacting the statute, the penal section being merely incidental and collateral thereto; hence the board, by the express terms of the statute, was given power to enforce its provisions. Manifestly the Legislature did not intend to limit the means of enforcement to the small and insignificant penalty provided in section 18 (section 2636-18) of the act. The board could make little progress towards enforcing the act, if it was confined to prosecutions to recover the small penalties. If an arrest was made and the highest penalty administered, the practice could be resumed, and, perhaps, many times the amount of the penalty could be collected from ignorant and confiding patrons until the second violation was discovered, if at all, and in the meantime the mischief intended to be prevented would continue unabated."

The doctrine of our domestic cases, supra, is in accord with the practice in other jurisdictions, as will be seen from the text in 14 R. C. L., pages 379, 380, 381, secs. 80 and 81, and the text in volume 29 of the same publication, pages 474 to and including 477, secs. 89 and 90, and the doctrine therein announced is the same as is stated in other authoritative texts upon the same subject.

The involved statute in that case regulated the right of one to practice dentistry in this commonwealth and

prescribing qualifications, and the defendant therein was sought to be enjoined from practicing that profession without complying with the provisions of our statute relating thereto. The right of the Kentucky state board of dental examiners (or of whatever particular state, agency or department, in which the authority existed to maintain the action for the purpose of obtaining the injunctive relief sought) was upheld in that case, and the relief prayed for was granted. The Jones case involved the same relief with reference to the same statute that was alleged to have been violated in the Payne case; while the other cited domestic cases dealt with other statutes relating to other subjects, but of the same nature, and each of which was enacted in furtherance of the same legislative purpose that prompted the enactment of the statute relating to the practice of dentistry.

There can be no distinction drawn between the principles applied in the Payne and Jones cases and those that should prevail in this one, they being parallel in all essential respects. Therefore, the only argument offered by counsel for defendant in his brief in this court is: That the commonwealth did not prove that defendant was operating his drug store by compounding medicines and filling prescriptions, contrary to the statute, supra, at the time (May 18, 1929) the petition was filed, and for which reason the judgment of the trial court dismissing it should be affirmed.

Outside of that contention, and the concession supra, the remaining portion of the brief consists in derogatory innuendoes against the state board of pharmacy and its officers and agents in their effort to require defendant to comply with the law and obtain a certificate, as required by the statute, or upon failure to do so to then employ a duly licensed pharmacist in his drug store; but, if he should fail to do either, then that he should cease compounding, prescriptions or doing any of the things for which a license is required by the statute; but at no time was he requested or any demand made of him to close his drug store and to discontinue its operation, but which latter it is insisted, in brief of counsel, was and is the object and purpose of the board and of its officers and agents. There is also contained in brief of counsel a laudation of defendant as a citizen and a druggist in his community; but which we conclude he does not urge as a meritorious defense in this case, nor do the criti-

cisms and innuendoes, supra, of counsel in any wise excuse his client from the legal consequences of the violations with which he is accused, or render him immune from the restraints of an injunction if the facts in the case authorized its granting. Therefore we repeat, the only fact argued in brief that could in any view of the case approach a defense to the relief sought by the petition is the one that at the immediate time of the filing of the petition defendant was not violating any of the sections of our statute, supra.

It was positively proven, and undenied, that on the 8th day of May, 1929 (ten days before the filing of the petiton), defendant was himself filling prescriptions in his drug store and without the aid of a present assistant pharmacist who was legally qualified to fill prescriptions, and that he had been doing so since the latter part of February or the first of March of that year. The proof furthermore shows without contradiction that, practically throughout the period covering defendant's ownership of the drug store, there were various and numerous occasions when he did operate his drug store and fill prescriptions by compounding medicines in violation of the section of the statutes, and that he was then most politely and courteously importuned by letters written by the secretary of the board, Dr. John W. Gayle, of Frankfort, Ky., to desist therefrom, and in which there was disclosed a disinclination to prosecute defendant, but only an earnest desire was then expressed that he would cease to operate the compounding department of his drug store contrary to the provisions of the statute, by either qualifying himself or procuring the services of a qualified assistant.

After a visit to the drug store on May 8, 1929, by a representative of the board (and on which day defendant violated the statute by himself compounding a prescription when he did not have an employed qualified assistant, nor the presence of one) the representative returned to Frankfort and reported the facts to the secretary of the board, and to the Attorney General of the commonwealth, which resulted in the preparation and filing of this petition ten days thereafter.

In his deposition in this case defendant was asked if he had in his employ a licensed or registered pharmacist on May 18, 1929, the day on which the suit was filed, and he answered: "I could not positively say unless I would look up some corespondence to verify it." He

never examined any of his correspondence, unless the letters that passed between him and the secretary of the board composed that correspondence, and all of which was introduced in the case; but he never at any time thereafter said whether or not he had in his employ such a registered pharmacist on that day, although the correspondence he referred to was before him. On the contrary, that correspondence, to which he referred in his answer, would indicate that he had no such one in his employ at that time.

Moreover, it is a fundamental rule in the law of evidence that:

"Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time. The limits of time within which the inference of continuance possesses sufficient probative force to be relevant vary with each case. Always strongest in the beginning the inference steadily diminishes in force with lapse of time, at a rate proportionate to the quality of permanence belonging to the fact in question, until it ceases or perhaps is supplanted by a directly opposite inference. In other words, it will be inferred that a given fact or set of facts whose existence at a particular time is once established in evidence continues to exist so long as such facts usually do exist. The inference is extremely faint in respect of possession of small articles of transient value, or in connection with matters of intrinsic impermanency." 22 C. J. 86, sec. 28.

In note 75 to the first sentence of that excerpt more than a page of cases from the various courts of this country are cited in support of it, among which are the domestic ones of Frey v. Commonwealth, 169 Ky. 528, 184 S. W. 896; Frey v. Commonwealth, 169 Ky. 534, 184 S. W. 899. Applying that rule to the facts in this case the court is authorized to infer that the same conditions existed on May 18, 1929, as existed ten days prior thereto on the 8th day of that month, the space of time intervening between those dates not being sufficient in extent to destroy the entire force of the presumption embodied in the rule supra, and, therefore, the burden was shifted to defendant to show that there had been a change in con-

ditions from the 8th to the 18 day of May. As we have seen, he failed to do that, and it, therefore, will be assumed that on the day the petition was filed he was violating the provisions of the Pharmacy Statute, supra, in this jurisdiction.

But it is argued that, notwithstanding such fact, defendant complied with the statute after the filing of the suit and before rendition of judgment, not by qualifying himself to compound prescriptions, but by employing a registered pharmacist who was so qualified, and because of which the question involved became moot before the cause was submitted to the trial court, and it properly dismissed the petition; but to that contenion we cannot agree. It is doubtless true that the voluntary abatement of a nuisance consisting of physical structures and other physical creations would also abate a court proceeding inaugurated to accomplish that same purpose, but the violations complained of here, which, to say the least of it, are in the nature of a public nuisance, consist in the maintenance of no such physical interferences like the obstruction of a public street, or of a private passway by a building, a fence, or the digging of a ditch. On the contrary, it consists in engaging in forbidden conduct, the penalty for which is small and prosecutions for which are difficult to sustain, as well as difficult to discover each and every violation, but from any one of which the damage and injury to the public sought to be prevented by the statute might occur, and for which reason this and other courts have announced the rule that, if such forbidden conduct had been persistently engaged in prior to the filing of the suit (though only periodically), and the statute was being so violated at the time of its filing, a later abandonment of it by defendant between that time and the rendition of judgment would not render the question moot so as to deprive the court of the right to apply to him the strong arm of its injunctive relief, and to thereby admonish him that he must observe the statutory requirements in the future. Especially should such a practice prevail in a case of this kind where human life and health might be imperiled and damage inflicted beyond repair.

In the one case (of physically created nuisance) its abatement, which involves restoration to former conditions, would assume the aspects of permanency and would authorize the inference of a bona fide determina-

206

tion on the part of defendant to no longer engage in its maintenance, and to permanently abandon its continuance, but no such deductions may be drawn from only a temporary relenting when the matter complained of consists only in forbidden conduct, which may be abandoned or resumed instanter upon his own whim or present purpose and will, and from which no bona fide change of purpose on his part may be drawn.

Hence, in the case of King v. Commonwealth, 194 Ky. 143, 238 S. W. 373, 377, 22 A. L. R. 535, involving the violation of a public policy statute of perhaps less importance, or less destructive consequences than the one here involved, we denied the identical contention now under consideration. In that case the defendant was sought to be enjoined from maintaining and operating a disorderly house, but which he claimed he ceased to do after the filing of the action and before rendition of judgment, and for which reason his counsel argued that the question was moot at the latter date, and that the injunction should not have been granted. In overruling that argument we said:

"The commonwealth charges that the defendant King did this for the purpose of evading the payment of costs, which are incident to this kind of proceeding, the statute providing that the furniture in the house, as well as the real property, shall be subject to the costs. However this may be, the chancellor had a broad discretion to grant or withhold the injunctive remedy sought by the commonwealth. Under the facts of this case, we are satisfied that he wisely granted the permanent injunction, although the nuisance had been abated, but after the action had commenced, and after the common-law remedy by indictment had failed to rid the community of this moral pestilence. In the case of Roberts, etc., v. City of Louisville, 92 Ky. 108 [17 S. W. 216, 13 Ky. Law Rep. 406, 13 L. R. A. 844], an injunction had been sought against the general council of the city of Louisville to prevent it passing a certain ordinance, and selling and disposing of certain wharf property and privileges in which the plaintiffs were interested. After the bringing of the action the proposed ordinance was withdrawn, and it was argued at the trial that, as the ordinance was withdrawn, the thing which provoked the litigation was at an end;

that no permanent injunction should be granted, and in answer to this contention we said: 'It is stated in the answer, that the ordinance was withdrawn after commencement of the action, and was not before the general council when the trial was had. But, as the plaintiffs had a cause of action, withdrawal of the ordinance did not have the effect to defeat their right to the relief sought, especially as another ordinance of the same character may be hereafter introduced and passed unless the right to do so be perpetually enjoined.' 14 R. C. L. page 308.''

To the same import is the text in 46 C. J. 794, secs. 420 and 421, in which it is pointed out that an abatement by defendant subsequent to the filing of the action will not prevent the granting of the permanent injunction where it is not made to appear that the abatement was in good faith, and upon that issue the character of violations and the objects and things of which they consist may be taken into consideration, as is hereinbefore pointed out. As we have seen, defendant herein from the time he became owner of the drug store engaged in repeated violations of the statute, and, as we have also seen, his alleged abatement consisted only in his temporary determinations to observe the statutory requirements which with the same ease he could abandon and adopt his former practice.

The authorities cited, and the two domestic cases referred to, announced a sound principle and are in accord with the sound public policy underlying our statute, as well as the wholesome purpose intended to be accomplished thereby, and it also follows our prior opinions cited in the above excerpt. Indeed, the allowed injunctive remedy in this character of case would be of no avail whatever if a contrary holding was adopted; for in each and every case the defendant, in order to defeat the injunction applied for, could, and undoubtedly would, desist from the violation of the statutory requirements, and adopt a compliance therewith before the entry into trial of the injunction proceedings, or upon its submission to the court, and thereby defeat the pending action, and on the next day return to his former course and engage in operations in violation of the statute, and so continue until another suit was ready to be submitted, or tried, and then again evade its consequence in the same

208

manner, and so on ad infinitum. The law is not so helpless as to permit such consequences in such circumstances, and, therefore, the doctrine announced in the cases and authorites, supra, meet with our hearty approval.

It results, therefore, that the court erred in dismissing the petition, and its judgment in doing so is reversed, with directions to grant the perpetual injunction according to the prayer of the petition, and for other proceedings consistent therewith and in accordance with this opinion.

Whole court sitting.