CARAVELLA *et al. v.* STATE *ex rel.* HOLCOMB.

(Division B. Feb. 27, 1939. Suggestion of Error Overruled March 27, 1939.)

[186 So. 653. No. 33593.]

(1)

Hearst, Pittman & Pittman, of Hattiesburg, for appellants.

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

**Ethridge, P. J.**, delivered the opinion of the court.

On the first day of April, 1938, M. N. Holcomb filed a sworn bill in the Chancery Court of Lamar county, Mississippi, alleging that he was a citizen and resident of Lamar county, tenth Chancery Court district of Mississippi; that the defendants, R. V. Caravella and Clara Caravella, are residents of Forrest county; and the defendants, Clay Redding and Blondie Groves, reside in Lamar county. That the defendants, in flagrant disregard and open defiance of the laws of Mississippi, to the detriment of the welfare, morals and well-being of the citizens of the county of Lamar, Mississippi, have on numerous occasions illegally had in their possession large quantities of intoxicating liquors in and on the premises therein described; "and do now illegally have and possess in and on said premises large quantities of intoxicating liquors, and defendants have at all times known and do now know, that said intoxicating liquors were and are in their possession in and on said premises;" and have now on such premises large quantities of intoxicating

liquors; that the defendants have at all times known that such liquors were in their possession, and on the premises described therein in detail.

Complainant further charges that the defendants at the same time did illegally exhibit on the said premises, and have in their possession, certain gambling tables and devices, which were habitually operated in violation of the laws of Mississippi, and particularly of sections 960 to 969, Code of 1930, and chapters 341 and 349, Laws of 1938; and that on account thereof said premises constituted a nuisance within the express language and meaning of the laws of the state, and should be abated as such; that complainant had no adequate remedy at law to protect itself against this nuisance, etc., and prayed for a writ of injunction without notice, for the seizure of the said liquors and gambling tables and devices, and for an injunction against their removal from the place; and that the defendants be summoned to appear at the April Rules, 1938, to plead, answer and demur to the bill, answer under oath being waived.

It was specifically prayed, (1) that the court fix a time and place for the hearing; (2) that the defendant be required to discover the exact description of said premises, and the owners and lessees thereof; (3) that the court abate the nuisance and order that the premises wherein the nuisance exists be closed; (4) order that the intoxicating liquors and gambling devices found on said premises be confiscated and destroyed; and (5) enjoin and restrain defendants, their agents, servants and employes from having in their possession in said premises any intoxicating liquors, gambling tables or devices; and for other and further relief.

On the second day of April the Chancellor issued a restraining order against the defendant on a motion for a temporary injunction, and directed that a copy of such order be served upon the defendants.

In the restraining order, also, he directed as follows: "It is therefore ordered, adjudged and decreed that the defendants and each of them, and all other persons are

hereby restrained from removing or in any manner interfering with personal property and the contents of the place where such nuisance is alleged to exist as described in the said petition until the decision of the court granting or refusing such temporary injunction and until the further order of the court thereon.''

The sheriff of Lamar county, acting under the restraining order, returned an inventory of the contents of said building, and served a copy upon the defendants. This inventory recites the following described personal property: 11 pints assorted intoxicating liquors, 9 restaurant tables, 36 chairs, 1 orange crush ice box, 1 Coca Cola ice box, 1 Hot Point electric range, 1 General Electric ice box, 1 Hot Point water heater, 1 kitchen table, 1 iron bedstead, 1 mattress, 2 feather pillows, 1 coal heatrola, 2 wood cabinets, 1 Wertiziler Victrola, 1 Emerson fan circulator, 1 National Cash Register, No. 3 11269-194313-LB-IC.

The defendants, R. V. Caravella and Mrs. R. V. Caravella, filed an answer to the bill, denying that they were in charge of the building or of any of the personal property; alleging that they had leased the building to Clay Redding and Blondie Groves as tenants in possession of the premises, ''and these defendants aver that they themselves, at the times and dates mentioned, were not in possession of the said premises, and had no control thereof, and had no personal property situated thereon, and were not conducting any business whatsoever on said premises, and were not in possession of the use thereof in anywise. They aver that they have never had, owned, or had in their possession or under their control on said premises, any sort of property or devices or anything else in violation of the law or which in anywise constituted a nuisance and an insult to the laws of the state.''

Sebe Dale, district attorney, filed a petition of intervention on behalf of the state, to join in the proceedings to abate the said nuisance. On the hearing of the application for a temporary injunction evidence was heard, showing that the place was operated in a manner which vio-

lated the laws in regard to the sale of intoxicating liquor, had acquired a reputation for the sale of intoxicating liquors and gambling. It was also shown that Mrs. Caravella owned the building, and that the Caravellas, before the institution of the proceedings here, had secured a license to operate the place as a restaurant and drink stand, and that under the facts developed the Chancellor was warranted in finding that they knew the character of business being carried on, and had permitted it to be so operated, even if not in fact directly interested therein. The Chancellor issued the restraining order, prohibiting further operation of the place, pending a hearing, adjudging that it had been operated as a nuisance, in violation of the statutes hereinafter referred to.

The cause came on for final hearing, and the case was sent down on the evidence introduced on the hearing for a temporary injunction, and on the final hearing the Chancellor adjudged the place to be a nuisance, and that the Caravellas were guilty of operating the place as a nuisance, it appearing that they had been convicted in the justice of the peace court of so doing, and that in the community it was known as a place where liquor could be bought and consumed, and gambling could be carried on and gambling devices played; and the Chancellor directed that the Caravellas each execute a bond in the sum of $1,500, in accordance with chapter 349, Laws of 1938, for the observance of the laws of the state pertaining to gambling and prohibition for a period of two years from the date of the filing of the bond by the Chancery Clerk. The Chancellor perpetually enjoined Mr. and Mrs. Caravella, and the other defendants, from operating a nuisance on the premises in question; and decreed that all personal property in use in connection with such nuisance should be condemned and sold by the sheriff of Lamar county, as provided by law for the sale of chattels, the costs to be taxed against each of the defendants, and to be paid out of the proceeds of the sale of personal property.

Thereupon a petition which had been filed by the First

Federal Savings & Loan Association of Hattiesburg, a corporation, wherein the petitioner showed to the court that it was a money lending corporation, lending on property within a radius of fifty miles of Hattiesburg; that it did not know of, or have any part in, the violation of law by the defendants; and the court, on the petition of said Association that it had foreclosed its deed of trust, and acquired title to the property, and was now owner of the premises in question, being satisfied of the innocence of the petitioner and of the good faith of the petition, ordered, adjudged and decreed that the First Federal Savings & Loan Association be permitted to take possession, use and occupancy of the real estate and real property described, provided it allowed no nuisance, as defined by the laws of the state of Mississippi, to be maintained thereon.

The Chancellor granted an appeal to R. V. Caravella and Mrs. R. V. Caravella on execution of the bond for $1,000, and the appeal here involved is their appeal.

The building being released to the First Federal Savings & Loan Association, which had foreclosed its deed of trust, all rights pertaining thereto, so for as appellants are concerned, disappeared, and are not here involved. The appellants expressly disclaimed, in their answer, any ownership, title or claim to the personal property seized; consequently the question of the propriety and legality of the seizure of the said property is not involved in this appeal.

It will be noted from the statement of the case that the bill for injunction alleged both possession of intoxicating liquors, and the conduct of the business as a nuisance in reference thereto, and also that it was conducted as a gambling place, with the paraphernalia for gambling, and gambling devices being operated; both of which allegations were sustained.

Chapter 341, Laws of 1938 (House Bill No. 497), reads as follows:

"That any building, club, vessel, boat, place or room, wherein is kept or exhibited any game or gaming table,

commonly called A. B. C. or E. O. roulette, or rowley-powley, or roquetnoir, roredo, keno, monte, or any faro-bank, dice, or other game, gaming table, or bank of the same or like kind, or any other kind or description of gambling device under any other name whatever, and any such place where information is furnished for the purpose of making and settling bets or wagers on any horse race, prize fight, or on the outcome or any like event, or where bets or wagers, are arranged for, made or settled, shall be deemed to be a common nuisance and may be abated by writ of injunction, issued out of a court of equity upon a bill filed in the name of the state by the attorney general, or any district or county attorney, whose duty requires him to prosecute criminal cases on behalf of the state in the county where the nuisance is maintained, or by any citizen or citizens of such county, such bill to be filed in the county in which the nuisance exists. And all rules of evidence and of practice and procedure that pertains to courts of equity generally in this state may be invoked and applied in any injunction procedure hereunder. . . .

"That upon the abatement of any such nuisance, any person found to be the owner, operator or exhibitor of any gambling device described in section 1 hereof may be required by the court to enter into a good and sufficient bond in such amount as may be deemed proper by the court, to be conditioned that the obligor therein will not violate any of the laws of Mississippi pertaining to gaming or gambling for a period of not to exceed two years from the date thereof. The failure to make such bond shall be a contempt of court and for such contempt the person or party shall be confined in the county jail until such bond is made, but not longer than two years. Said bond shall be approved by the clerk of the court where the proceedings were had and shall be filed as a part of the record of such case."

This act was in force from and after February 23, 1938.

Chapter 349, Laws of 1938, is an amendment to section 2007, Code of 1930, and reads as follows: "Any

club, vessel or boat, place or room where liquors are found, kept or possessed or any boat or vessel used in any of the waters of this state in conveying any intoxicating liquors or any person with intoxicating liquor in their possession or under their control into or in this state shall be deemed to be a common nuisance, and may be abated by writ of injunction issued out of a court of equity upon a bill filed in the name of the state by the attorney general or any district or county attorney whose duty requires him to prosecute criminal cases on behalf of the state, in the county where the nuisance is maintained, or by any citizen or citizens of such county, such bill to be filed in the county in which the nuisance exists. And all rules of evidence and the practice and procedure that pertain to courts of equity generally in this state may be invoked and applied in any injunction procedure hereunder. Upon the abatement of any such place as a nuisance the person found to be the possessor or owner of such liquor may be required by the court to enter into a good and sufficient bond in such amount as may be deemed proper by the court, to be conditioned that the obligor therein will not violate any of the prohibition laws of the state of Mississippi for a period not to exceed two years from the date thereof. The failure to make such bond shall be a contempt of court and for such contempt the person or party shall be confined in the county jail until such bond is made, but not longer than two years. Said bond shall be approved by the clerk of the court where the proceedings were had and shall be filed as a part of the record of such case.''

These statutes expressly authorize institution of proceedings for abatement of a nuisance by private citizens, declaring the business referred to in the proceedings to constitute a nuisance, to be abated by a proceeding in the chancery or equity court.

In addition to these statutes, section 1979, Code of 1930, expressly declares that: ''No property rights shall exist in any person, natural or artificial, or be vested in them in any intoxicating liquors or intoxicating drinks

prohibited by this chapter from being manufactured, or distilled, or sold, or possessed, nor shall any property rights exist in such persons of stills, fixtures, furniture, vehicles, automobiles or other motor-power means of transportation, or in boats, ships, or other water craft, or air-craft or any other articles, when such articles are being kept or used, directly or indirectly, as means and appliances to violate the provisions of this chapter, and all such things may be seized by any sheriff, or other lawful officer of this state and destroyed and rendered useless without any formal order of the court, and may be searched for and seized under the laws of this state. But all vehicles, conveyances, or other means of transportation above described, kept and used in handling of liquor or otherwise violating the provisions of this chapter may be first seized by such sheriff, or other lawful officer, who shall immediately make complaint under oath before the proper officer, or court, stating the facts connected with said seizure by him, giving the name or names of the person or persons found in possession or control of each article taken that was being used in transportation as well as the intoxicating liquors, or drinks and appliances or other articles seized and taken by him, and also giving the name of the owner of each article, if the same is known to him. Whereupon the said officer or court shall summon into his court all interested parties and may issue a writ of seizure, if said property, or any part of it is not in the possession of said officer, for the seizure of any of said property and the summoning of the interested parties into court, as in proceedings for the enforcement of purchase price liens against property.''

Taking these statutes all together, the proceeding here involved was warranted, and the proof fully sustains the judgment of the Chancery Court, which does not restrain the lawful use of the property, that is, the real estate involved; and, as stated, that property was released to the First Federal Savings & Loan Association; to that extent being distinguished from the order in the case of

Pigford v. State ex rel., Miss., 183 So. 259. In the Pigford case the court expressly approved that part of the decree enjoining the defendants from operating the property as a nuisance, which is in harmony with the holding here. The decree in this case was on a full hearing, and the order appealed from was authorized by the proceedings; and the personal property seized under the direction of the Chancery Court is not involved in this appeal, and this opinion is not in conflict with the holding of the Court in Redding v. State, Miss., 185 So. 560.

It was argued that the testimony should not have been admitted, because there was no such warrant in conformity with section 23 of the Constitution; but the proceedings here were instituted on a bill presented to the Chancellor, sworn to by the relator, Mr. Holcomb, particularly describing the place, and the character of appliances, or property used in connection with the business. The seizure here in question was made upon affidavit substantially in accord with the requirements of section 23 of the Constitution, and the order was in the nature of the proceeding authorized or contemplated by that section; and although not in name a search warrant, yet in all its facts and circumstances, it was of the character of proceeding authorized by law, in conformity with section 23 of the Constitution.

It is also argued here that it was not competent for the court to decide the case on final hearing, on the proof submitted on the hearing for a temporary injunction alone. We think the evidence produced on that hearing was sufficient to support the decree rendered; and there was no request on the part of the appellants that they might present any additional evidence, or demand for a further hearing, with the showing that other and additional evidence was desired to be offered. Consequently there is no merit in this contention.

The judgment decree of the court below is affirmed.
Affirmed.