STATE *ex rel.* WHALL *v.* SAENGER THEATRES CORPORATION *et al.*

(In Banc. Feb. 10, 1941.)

[200 So. 442. No. 34397.]

Graham & Graham, of Meridian, for appellant.

**Gex & Gex,** of Bay St. Louis, and **Geo. R. Smith,** of Gulfport, for appellees.

Green & Green, of Jackson, amicus curiae.

**Roberds, J.,** delivered the opinion of the court.

This suit was instituted in the Chancery Court of Harrison County in the name of the State of Mississippi, on the relation of Jack Whall, as an individual resident of that County, and by Jack Whall personally, against the Saenger Theatres Corporation, a nonresident corporation, and the Hancock Bank, domiciled at Gulfport, said County, seeking to (1) abate, as a public nuisance, under Chapter 341 of the Laws of 1938, the practice of "Bank Nite," as it is alleged, on the part of the Theatres Corporation at its two theatres operated in the City of Gulfport, and (2) to recover, under Section 1826, Code of 1930, a personal decree against said Theatres Corporation for the sum of $3,000, which consisted of $40 complainant himself, from time to time, had paid to said Theatres Corporation for admission to said bank night shows, and

$2,960 which other parties from time to time had paid for such admission, and which other claims, for valuable consideration, had been assigned to said Whall, the bill inviting others similarly situated to join therein, and (3) to impound in the said Hancock Bank any property it might have in its possession belonging to said nonresident defendant.

Defendant Bank filed no answer. Theatres Corporation filed a general demurrer on the ground there is no equity on the face of the bill, and a special demurrer setting up nine grounds, the main contentions being (1) that complainant and his assignors, as to the money by them paid for admission, were in pari delicto, (2) did not come into court with clean hands, (3) that the bank night scheme was not a game or wager under Section 1826, Code of 1930, entitling the participant to recover the money lost by gambling, (4) that complainant could not bring the action without first having made request of the proper state official to do so, and (5) the scheme described was not a common nuisance under Chapter 341, Laws of 1938.

The learned Chancellor sustained the demurrers mainly on the ground that complainant could not bring this action in the name and on behalf of the state until he had made "a bona fide" effort to have the same instituted either by the Attorney General, the District Attorney or the County Attorney. Complainant declined to amend and a decree was entered dismissing the bill without prejudice.

After the appeal record was filed in this Court, and on December 27, 1940, appellee theatres filed here four affidavits of four persons, alleging they were managers of the two picture shows in Gulfport and the two in Biloxi operated by defendant Saenger Theatres, and also affidavits of the Mayors of these respective cities, all saying "that no form or plan of so-called 'Bank Night' has been conducted in said moving picture theatres operated in said City during said period, to-wit, three months next preced-

ing the date of this affidavit.'' Thereupon, defendant Saenger Theatres moved here to dismiss as a moot question the public nuisance feature of the bill.

The questions, therefore, presented by this record for our decision are (1) whether the public nuisance feature is a moot question, (2) the right of Whall to bring this action in the name of the State without first requesting the proper official to do so, (3) whether bank night is a public nuisance under Chapter 341, Laws of 1938, and (4) whether the bill is multifarious. We will consider and dispose of these questions in the order stated.

1. Proof of abandonment of bank night practice is presented by ex parte affidavits on the part of appellees. No question is raised as to the manner of proof, and, therefore, we do not pass on that, but we call attention to Section 3376, Code of 1930, dealing with trials of issues of facts in this Court.

Whether an injunction will issue where the defendant since the action was instituted has ceased to engage in the act is a matter of discretion of the court. King v. Commonwealth, 194 Ky. 143, 238 S. W. 373, 22 A. L. R. 535; Rice v. Moorehouse, 150 Mass. 482, 23 N. E. 229; Fox v. Corbitt, 137 Tenn. 466, 194 S. W. 88.

But in order to warrant the refusal of the injunction, proof must be made that the abandonment is in good faith and permanent. It has been held that to authorize the dismissal of the proceedings there must be a satisfactory showing that the acts are no longer done by the parties anywhere within the jurisdiction of the court. State v. City Club, 83 S. C. 509, 65 S. E. 730; State v. Jerome, 80 Wash. 261, 141 P. 753; State v. Brady, 90 S. C. 288, 73 S. E. 179; Commonwealth v. Brown, 239 Ky. 197, 39 S. W. (2d) 223.

The affidavits before us nowhere disclose any future intention of appellee as to the practice of bank night. There is no proof before us it might not immediately re-engage in the practice after disposal of this case. The bill alleges appellee is operating in Mississippi a chain of

theatres, and there is no proof before us that bank night is not in operation at other theatres of appellee in Mississippi.

We, therefore, hold that the question of nuisance is not a moot question.

2. Chapter 341, Laws of 1938, reads as follows:

"Section 1. Be it enacted by the Legislature of the State of Mississippi, That any building, club, vessel, boat, place or room, wherein is kept or exhibited any game or gaming table, commonly called A. B. C. or E. O. roulette, or rowley-powley, or rouquetnoir, roredo, keno, monte, or any faro-bank, dice, or other game, gaming table, or bank of the same or like kind, or any other kind or description of gambling device under any other name whatever, and any such place where information is furnished for the purpose of making and settling bets or wagers on any horse race, prize fight, or on the outcome or any like event, or where bets or wagers, are arranged for, made or settled, shall be deemed to be a common nuisance and may be abated by writ of injunction, issued out of a court of equity upon a bill filed in the name of the state by the attorney general, or any district or county attorney, whose duty requires him to prosecute criminal cases on behalf of the state in the county where the nuisance is maintained, or by any citizen or citizens of such county, such bill to be filed in the county in which the nuisance exists. And all rules of evidence and of practice and procedure that pertains to courts of equity generally in this state may be invoked and applied in any injunction procedure hereunder.

"Sec. 2. That upon the abatement of any such nuisance, any person found to be the owner, operator or exhibitor of any gambling device described in section 1 hereof may be required by the court to enter into a good and sufficient bond in such amount as may be deemed proper by the court, to be conditioned that the obligor therein will not violate any of the laws of Mississippi pertaining to gaming or gambling for a period of not to exceed two

years from the date thereof. The failure to make such bond shall be a contempt of court and for such contempt the person or party shall be confined in the county jail until such bond is made, but not longer than two years. Said bond shall be approved by the clerk of the court where the proceedings were had and shall be filed as a part of the record of such case.''

The statute expressly states the action may be instituted ''by any citizen or citizens of such county.'' It does not by its terms first require request of and refusal by the proper state official to institute the action. It is unlikely that the Legislature did not have in mind this question at the time of the passage of the act. It might easily have inserted such provision.

While in the absence of statutory authority a citizen, as such, has no standing to champion the rights of the public in abating a public nuisance, the Legislature may authorize such action. 46 C. J., p. 739, and cases cited in footnote 53.

In the case of Pompano Horse Club v. State, 1927, 93 Fla. 415, 111 So. 801, 803, 52 A. L. R. 51, the action was by a private individual in the name of the state to abate as a nuisance betting on horse races. The Florida statute provided the action might be brought by ''the State's Attorney, county solicitor, county prosecutor, or any citizen of the county through any attorney he may select . . .'' Rev. Gen. St. Fla. 1920, Sec. 3223. It was held that no prior request need be made of the designated officials to bring the suit before the individual might institute it.

The case of Little River Theatre Corp v. State, 1939, 135 Fla. 854, 185 So. 855, was an action by a citizen to abate as a nuisance the practice of bank night, and the court held such proceeding might be maintained by a citizen without first requesting the officials to do so.

It will be noted this case is different from actions by taxpayers for the unlawful paying out of money by officials and cases where complainant has suffered some

special and peculiar damage from the maintenance by defendant of a nuisance.

The question here has not been decided in Mississippi, but in the case of Caravella v. State ex rel. Holcomb, 185 Miss. 1, 186 So. 653, 656, which was a suit in chancery under the same Act as here, in the name of the State on relation of Holcomb, as a citizen, to abate the nuisance of selling intoxicating liquors and possessing and operating gambling tables, this Court used this language: ''These statutes expressly authorize institution of proceedings for abatement of a nuisance by private citizens, declaring the business referred to in the proceedings to constitute a nuisance, to be abated by a proceeding in the chancery or equity court.'' While this statement is perhaps dictum, since Dale, the district attorney, had been admitted as a party to this action after its institution and before the decision of the case, yet it is an expression of the thought of the court on the question at that time.

We hold that the action was properly maintainable by Whall in the name of the State in this case.

3. The bank-night plan as described in the bill is this: Defendant operated two picture shows in Gulfport, Harrison County. Through the services of attractive young ladies, it made a canvass of Harrison, Hancock, and Stone Counties and procured the signatures and addresses of several thousand citizens in a ''General Registration Book,'' more than half of whom lived twenty-five, or more, miles from Gulfport; that this was done for the purpose of increasing the odds that the person whose name was drawn in the scheme would not be present at the drawing; that the ticket office was outside the entrance of the theatre lobby, adjacent to the sidewalk, and the registration book was kept in the lobby, and in order for one to enter the lobby he must have an admission ticket. Any person having an admission ticket might register, but this was optional; no one had to register. Opposite each name in the register is a number and for each name on the register a ticket, or card, bearing the same

number opposite the name on the register is placed in a box or wire basket, which is locked.

One night a week is designated bank night, and it is advertised extensively as such and that prizes or awards in money will be given away that night. There are two prizes, a weekly and a grand prize. On that night, between 7 and 10 o'clock, the show is stopped and a drawing is held on the stage of one of the two theatres. Some person, usually a child, is selected from the audience, requested to come to the stage, is blindfolded and draws a number from the basket. This is checked against the registration book to determine the person who won the prize. The name of such person is then called out. If he is not present in that building, then the announcement is transmitted by wire to the other show. If he is not present at the other show, then the register of those attending matinée of both shows that afternoon is examined. If the person so called is in either show, or, if not, if he is shown by the register to have purchased a ticket for either show that afternoon, he is entitled to the award; otherwise, not. This process is repeated until the name of some person is called who is either in attendance on one of the two shows or is shown to have been at the matinée that afternoon at one of them. The ticket is then replaced in the receptacle and there is a drawing for the grand prize, but as to the grand prize there is only one drawing, and if the person whose name is called is not present at one or the other of the shows or at afternoon matinée, then it is announced the grand prize the following week will be augmented in an amount then determined and named by the theatre, but usually $50. No additional charge is made for the privilege of participating in the drawing, but the bill states inferior pictures were shown on bank nights.

Appellant, in his able brief, puts the question: "Does the scheme of 'Bank Nite' constitute a game or gambling device as classified in Chapter 341 of the 1938 General

Laws of Mississippi?'' Therefore, the question is limited to this Act; the action is brought under this Act.

Certain things are named in the Act, but bank night is not named. If it is included, it must come within the clause ''or any other kind or description of gambling device under any other name whatever.''

These are the same acts enumerated in Section 962, Code of 1930. The general clause in the 1930 Code reads ''or any other kind or description under any other name whatever.'' These general clauses mean the same thing. This same statute appears as Art. 136, c. 64, p. 596, Code of 1857, except the 1857 Act included pool among the enumerated subjects. We have not investigated farther back than 1857. But, with the elimination of pool as a specific subject, and a change in punishment, this statute has been a part of the criminal law of this State for about one hundred years.

In construing this clause we are confronted with the fundamental rule of construction that where a statute enumerates and specifies the subjects or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned, or, under a general clause, those not of like kind or classification as those enumerated. Inclusio unius est exclusio alterius. Fisher v. Westmoreland, 101 Miss. 180, 57 So. 563, Ann. Cas. 1914B, 636; Parsons-May-Oberschmidt Co. v. Furr et al., 110 Miss. 795, 70 So. 895; Tepper Bros. v. Buttross, 178 Miss. 659, 174 So. 556; Redding v. State, 184 Miss. 371, 185 So. 560.

The nature of the games enumerated appear to be either those played with cards or dice or by the use of physical equipment designed and constructed and especially adapted to the playing of the named game and kept on hand for that purpose. For instance, roulette is played at a table having in the center a rotating disk surrounded by numbers and colored spaces, on which a ball is rolled in opposite direction to the disk until it rests on one of the disks or spaces, the player winning if he has staked

his money on that disk or space. Whether this is or is not a technically correct description of all the enumerated subjects, it is so in a general way. Appellant in his brief selects Keno as being nearest in its nature to that of a drawing. The New Standard Dictionary describes Keno as "a game of chance played by drawing numbered balls or knobs from an urn or wheel and covering with buttons the corresponding numbers on cards. The numbers on the cards are arranged in rows of five, and the player who first has a row covered wins."

The bank night scheme outlined in the bill does not appear to come within the class of the enumerated subjects.

This statute is penal and we must construe it strictly. Redding v. State, 184 Miss. 371, 185 So. 560.

It is common knowledge that when the present Act was adopted in 1938 bank night was in common practice in Mississippi. The Legislature might very easily have named this plan had it intended the act to cover it.

It is not necessary for us to decide, and we do not intimate, whether the scheme here involved is a lottery under the criminal law of Mississippi. We confine this opinion strictly to whether bank night is a nuisance under Chapter 341, Laws of 1938, and we hold that it is not a nuisance under that law.

4. Under this conclusion and in this state of the record we do not consider whether the bill is multifarious.

Affirmed.