236 So.2d 437 (1970)
Connie AKERS, Mother and Next Friend of Ruby Telia Akers and Cynthia Louise Akers, Minors
v.
ESTATE OF Dave JOHNSON, Deceased.
No. 45864.
Supreme Court of Mississippi.
June 8, 1970.
Teller Biedenharn, Rogers & Marcus, Landman Teller, Jr., Vicksburg, for appellant.
Dent, Ward, Martin & Terry, Ernest Lane, III, Vicksburg, for appellee.
*438 PATTERSON, Justice.
This is an appeal by Connie L. Akers, the illegitimate mother of two minor illegitimate children. She propounded a claim in the lower court for the benefit of her two minor illegitimate children against the estate of Dave Johnson, their putative paternal grandfather. At the conclusion of the trial in the Chancery Court of Warren County, the Chancellor accepted all of the facts as alleged by the claimant as true, but found as a matter of law that the illegitimate children were not legally entitled to inherit from the grandfather to the exclusion of his surviving brothers and sisters and their descendants.
The only assignment of error on appeal is that the court erred in construing Mississippi Code 1942 Annotated section 474 (1956) so that the brothers and sisters of the decedent would inherit to the exclusion of the decedent's grandchildren.
The claim propounded is for the benefit of the illegitimate children of an illegitimate mother against the estate of Dave Johnson who was alleged to be the father of Connie L. Akers, the mother of the claiming illegitimate children. Dave Johnson died intestate on August 4, 1968, having never married, but leaving surviving him brothers and sisters or their descendants. The issue before the Court is the determination of who is entitled under the law to inherit the personal and real property of the decedent.
Mississippi Code 1942 Annotated section 474 (1956) entitled Descent Among Illegitimates is as follows:
If any man beget a child or children by a woman whom he shall afterward marry, such child or children, if acknowledged *439 by the man, shall, in virtue of such marriage and acknowledgment, be legitimate, and capable in law to inherit and transmit inheritance as if born in wedlock. All illegitimates shall inherit from their mother, and from her other children, and from her kindred, according to the statutes of descent and distribution; and the children of illegitimates and their descendants shall inherit from the brothers and sisters of their father or mother, whether legitimate or illegitimate, and from their grandparents. But the children of illegitimates shall not inherit from any ancestor or collateral kindred if there be legitimate heirs of such ancestor or collateral kindred, in the same degree, to whom the estate would otherwise descend. And the mother of an illegitimate, her other children, and her kindred, whether they be legitimate or illegitimate, shall inherit from an illegitimate according to the statutes of descent and distribution. (Emphasis added.)
The appellant contends the provision of the statute "children of illegitimates and their descendants shall inherit from * * * their grandparents" is controlling since the statute, in plain language, states that they are entitled to inherit unless there are "legitimate heirs * * * in the same degree." After due consideration we are of the opinion that this construction of the statute is erroneous since it does not correctly reflect the legislative intent. In accord with familiar rules of construction the courts give consideration to the purpose of the statute, the object to be accomplished, and the intent of the legislature in enacting it. Thornhill v. Ford, 213 Miss. 49, 56 So.2d 23 (1952). We have also held that the proper method to determine the real intent of the legislature is to study the words used by it in context. Back-Acres Country Club, Inc. v. Mississippi State Tax Comm'n, 216 So.2d 531 (Miss. 1968). What then was the intent of the legislature in enacting Section 474? At common law an illegitimate's plight was indeed harsh and is perhaps best expressed in the case of Alabama & V. Railway Co. v. Williams, 78 Miss. 209, 214, 28 So. 853 (1900) wherein we stated:
* * * At the common law an illegitimate could not inherit from his own mother or any one else, and he could not transmit by inheritance, except to the heirs of his own body. He might become the propositus of a new line of descent from himself, but, until a child was born to him in wedlock, he had no kindred  no father, no mother, no sister, no brother  and nothing which he did not acquire. All kinship was denied, and no blood connection recognized, except that the courts, for the actual protection of his life as a person in the body politic, would ascertain the natural mother, and, for the conservation of the morals and decencies of society, would look into his natural blood kinship in vindicating the statutes against incest. Statutes denouncing penalties reached him, as they did all other persons, but statutes could not be availed of which would improve his condition, unless they expressly included illegitimates in their terms. The reason was to discourage adulterous connections.
The legal status of illegitimates has been ameliorated somewhat by legislative enactments which are set forth in Malone v. Pope, 189 Miss. 46, 196 So. 319 (1940), and which we do not repeat for brevity. Generally, however, the status of an illegitimate was improved from that mentioned in Alabama & Vicksburg Railway Co., supra, to that set forth in Section 474, which generally might be stated to contemplate inheritance by an illegitimate from the maternal side of the family and accords to an illegitimate the ability to transmit by inheritance to the mother, her other children, and her kindred. By modern concept the ill fortunes of an illegitimate may seem unreasonable since they are imposed by law. Beneficent legislation, beginning in 1821, and on three occasions since that time culminating in our present statute, has gradually expanded the rights of an illegitimate. However slow the enactment of merciful and *440 understanding legislation, this does not grant a court license to bridge the gap between what it thinks to be just and what the legislature has stated it to be. The statutes enacted, being in derogation of the common law, must be strictly construed. Prewitt v. Walker, 231 Miss. 860, 97 So.2d 514 (1957) and other citations too numerous to enumerate.
Turning then to the sentence in question, we note that the first two words thereof, "All illegitimates" express the aggregate of a distinct class of people and do not afford leeway by which "the children of illegitimates" as used in the latter part of the sentence may be considered as also illegitimates. The use of the totally inclusive words "all illegitimates" followed by an enumeration of their right of inheritance, excludes the thought of other inheritance by them. It is our opinion that the legislature did not intend by the use of "the children of illegitimates" to include the class which it had made provision for, but rather used the latter term subsequent to a semicolon and the conjunction "and" to distinguish the latter from the former rather than to merge the two. Specifically, the latter class, in our opinion, means the legitimate children of illegitimates. See State ex rel. Whall v. Saenger Theatres Corp., 190 Miss. 391, 403, 200 So. 442, 446 (1941) wherein we stated:
In construing this clause we are confronted with the fundamental rule of construction that where a statute enumerates and specifies the subjects or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned, or, under a general clause, those not of like kind or classification as those enumerated, Inclusio unius est exclusio alterius. Fisher v. Westmoreland, 101 Miss. 180, 57 So. 563, Ann.Cas. 1914B, 636; Parsons-May-Oberschmidt Co. v. Furr et al., 110 Miss. 795, 70 So. 895; Tepper Bros. v. Buttross, 178 Miss. 659, 174 So. 556; Redding v. State, 184 Miss. 371, 185 So. 560.
Illegitimates are restricted to inheritance from the maternal side of their family by legislative enactment. No provision is made for inheritance from the father, the reasons for which we believe to be obvious. The legislature having excluded inheritance from the father, we are of the opinion it was not the legislative intent to permit inheritance by an illegitimate from its paternal grandfather.
Affirmed.
ETHRIDGE, C.J., and JONES, INZER, and ROBERTSON, JJ., concur.